UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 24-cr-40010-JES-JEH |
| ) | |
| DEWAYNE D. JOHNSON-EMORY, ) | |
| ) | |
| Defendant. ) | |

### ORDER AND OPINION

Now before the Court is Defendant Dewayne D. Johnson-Emory's Motion to Suppress Fruit of Unlawful Detention (Doc. 17). The United States has filed a Response (Doc. 18). Because the parties do not dispute the relevant factual allegations, the Court finds that there is no need for an evidentiary hearing. *See United States v. Edgeworth*, 889 F.3d 350, 353 (7th Cir. 2018) ("Evidentiary hearings are not required as a matter of course."); *United States v. Curlin*, 638 F.3d 562, 564 (7th Cir. 2011) (an evidentiary hearing is necessary only "when a substantial claim is presented and there are disputed issues of material fact that will affect the outcome of the motion"). For the reasons set forth below, Defendant's Motion is DENIED.

### BACKGROUND

The undisputed facts in this matter are as follows: On November 18, 2023, at approximately 10:48 P.M., Officer Andrew Dotterer of the Moline Police was patrolling a residential area near 35th Street and 27th Avenue. As he drove south on 35th Street, Officer Dotterer noticed an individual—later identified as Defendant—walking in the same direction, wearing a dark hoodie with reflective material, dark sweatpants, and also a backpack. After passing Defendant, Officer Dotterer turned around to begin driving back northward. He found Defendant then walking northward as well.

Officer Dotterer noted in his police report that he typically patrolled this secluded residential neighborhood at night, but rarely saw walking pedestrian traffic. In that context, Defendant's presence and his sudden change of direction raised Officer Dotterer's suspicion. At the intersection of 35th Street and 27th Avenue, Officer Dotterer stopped and exited his vehicle without activating his lights. He asked Defendant to stop and talk, but Defendant continued walking, claiming he was heading to East Moline.

Despite several commands from Officer Dotterer, Defendant refused to engage and continued northbound. Eventually, Officer Dotterer informed Defendant that he was being detained, prompting Defendant to flee. He ran north on 35th Street and then east on 26th Avenue B, eluding Officer Dotterer as he darted through a residential yard. Officer Dotterer called nearby available units to assist.

Officer Travis Leedom, one of the responding officers, spotted Defendant running into a wooded area and pursued him on foot. After closing the distance on Defendant, Officer Leedom drew his weapon, ordered Defendant to show his hands, and instructed him to lay on his stomach and place his hands behind his back, which he did. After additional backup arrived, Officer Leedom handcuffed Defendant and searched him, finding no contraband.

Noticing Defendant no longer had his backpack, the officers began searching his escape route. They found a black backpack hidden in a bush at 3512 26th Avenue A. Scattered along the sidewalk were several items, including a notebook, a white shirt, multiple bills and papers bearing Defendant's name, and a gold spray-painted Tanfoglio .40 caliber handgun.

Defendant was charged in state court with being a felon in possession of a firearm and resisting arrest, with federal charges following. He has now moved to suppress the evidence found

in connection with the arrest as fruits of an unlawful detention in violation of his Fourth Amendment rights under the United States Constitution.

## LEGAL STANDARD

The Fourth Amendment to the United States Constitution safeguards "'the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures.'" *Utah v. Strieff*, 579 U.S. 232, 237 (2016) (cleaned up). Evidence gathered in violation of the Fourth Amendment may be suppressed under the exclusionary rule. *See Wong Sun v. United States*, 371 U.S. 471, 487 (1963).

As its plain text indicates, "the Fourth Amendment is triggered only by a search or seizure." *Hess v. Garcia*, 72 F.4th 753, 764 (7th Cir. 2023). A person is "seized" for purposes of the Fourth Amendment "only when, by means of physical force or a show of authority, his freedom of movement is restrained." *United States v. Mendenhall*, 446 U.S. 544, 553 (1980). While an officer's application of physical force always constitutes a seizure, a "show of authority" alone is insufficient; an officer's show of authority becomes a seizure only if the person at whom it is directed actually submits to that authority. *California v. Hodari H.*, 499 U.S. 621, 626 (1991). In other words, there are two kinds of seizures: those effected through physical force and those effected through a show of authority and "submission to the assertion of authority." *See id.*; *see also United States v. Cade*, 93 F.4th 1056, 1060 (7th Cir. 2024) ("A seizure occurs under the Fourth Amendment if a reasonable person would not feel free to leave, but not every encounter with police officers implicates the Fourth Amendment.").

"The Supreme Court has stated clearly that there is no constitutionally cognizable seizure 'simply because a police officer approaches an individual and asks a few questions.'" *United States v. Pace*, 48 F.4th 741, 748 (7th Cir. 2022) (quoting *Florida v. Bostick*, 501 U.S. 429, 434 (1991)). It is well settled now that, "even when officers have no basis for suspecting a particular individual,

3

they may generally ask questions of that individual, ask to examine the individual's identification, and request consent to search his or her luggage—as long as the police do not convey a message that compliance with their requests is required." *Bostick*, 501 U.S. at 435.

Finally, it is also well settled that the Fourth Amendment protects a defendant's legitimate expectation of privacy and thus "does not apply to abandoned property." *United States v. Pitts*, 322 F.3d 449, 455–56 (7th Cir. 2003); *accord United States v. Edwards*, 34 F.4th 570, 583 (7th Cir. 2022) ("No person can have a reasonable expectation of privacy in an item that he has abandoned."). "Abandonment turns upon an objective test of 'the external manifestations of the defendant's intent as judged by a reasonable person possessing the same knowledge available to the government agents involved in the search.'" *Id.* (quoting *United States v. Pitts*, 322 F.3d 449, 455–56 (7th Cir. 2003)). The Government bears the burden to demonstrate abandonment by a preponderance of the evidence. *See Pitts*, 322 F.3d at 456; *accord United States v. Basinski*, 226 F.3d 829, 836–37 (7th Cir. 2000) ("To demonstrate abandonment, the government must establish by a preponderance of the evidence that the defendant's voluntary words or conduct would lead a reasonable person in the searching officer's position to believe that the defendant relinquished his property interests in the item searched or seized.").

## ANALYSIS

The Government maintains that the items subject to Defendant's Motion to Suppress—including his backpack, papers, and firearm—were discarded during the chase, *i.e.*, abandoned for purposes of Fourth Amendment analysis and thus, beyond, the scope of the exclusionary rule. Defendant does not challenge the legality of the seizure of the evidence *per se*; he asserts only that law enforcement lacked probable cause *to chase him* in the first place, and thus everything flowing from the chase was tainted and should be suppressed as fruits of a poisonous tree. The Government

counters that, because the evidence was not seized from Defendant, controlling Supreme Court authority precludes the application of the exclusionary rule here. The Court agrees.

Under the undisputed facts at issue, Defendant forfeited any reasonable expectation of privacy in his backpack, including its contents, by discarding it as he ran from law enforcement. And because Defendant himself was not "seized" until *after* he had already discarded the evidence, there is no Fourth Amendment concerns to trigger the exclusionary rule here. This matter is factually and legally indistinguishable from *California v. Hodari H.*, 499 U.S. 621 (1991)—a Supreme Court precedent that is binding on this Court.

In *Hodari*, law enforcement in a high crime area observed several youths, including Hodari, fleeing when they saw the officers' vehicle approach. 499 U.S. at 623. One of the officers saw Hodari throw away what appeared to be a small rock, which, when recovered, proved to be crack cocaine. *Id.* at 623. In the juvenile proceeding brought against him, Hodari moved to suppress the evidence relating to the cocaine. *Id.* The state appellate court ordered suppression, finding that Hodari had been "seized" when he saw the officers running towards him. *Id.* The United States Supreme Court reversed, holding instead that Hodari was not "seized" until he was tackled by one of the officers. *Id.* at 629. The Court explained that a seizure under the Fourth Amendment does not occur until there is either "physical force" or, "where that is absent, *submission* to the assertion of authority." 499 U.S. at 626. There is no "continuing arrest during the period of fugitivity," the Court noted. *Id.* at 625; *see also Brendlin v. California*, 551 U.S. 249, 262 (2007) ("a fleeing man is not seized until he is physically overpowered").

Here, similarly, Defendant was not seized until he submitted to police authority *after* he had fled from the scene of the initial police interaction—and *after* he had discarded the items he now asks the Court to suppress. The fact that Officer Dotterer initially actually ordered Defendant

5

to stop may be a show of authority that has some bearing on the constitutional issue here, but it did not constitute the "laying on of hands or application of physical force" required in *Hodari*. *Id.* at 625; *see also United States v. Johnson*, 212 F.3d 1313, 1314 (D.C. Cir. 2000) (finding that a stop had not occurred when police officers approached a suspect with their guns drawn and ordered him to raise his hands). Attempted seizures of a person are generally beyond the scope of the Fourth Amendment. Thus, this initial interaction does not have any constitutional significance on its own. *See Hodari*, 499 U.S. at 626 n.2.

Since *Hodari*, the Seventh Circuit has repeatedly held that "it does not matter that [the defendant] was seized previously during the brief traffic stop, a seizure is a single act, and not a continuous fact and the minute [the defendant] fled from the scene of the traffic stop that brief period of custody ended." *United States v. Collins*, 714 F.3d 540, 543 (7th Cir. 2013); *accord United States v. Griffin*, 652 F.3d 793, 798 (7th Cir. 2011). In *Griffin*, for example, the defendant led the authorities on a low-speed car chase, and before he eventually pulled over, the defendant tossed a plastic bag containing crack cocaine into newly fallen snow in a parking lot. 652 F.3d at 795. The Seventh Circuit denied suppression of the crack, finding that the defendant discarded the drugs prior to being seized, which only occurs when, "by means of physical force or a show of authority, his freedom of movement is restrained." *Id.* at 798. The defendant there also argued that, since he eventually yielded to a show of authority by the police, the "seizure" began for constitutional purposes upon the initial show of authority and continued until he submitted. *Id.* at 799. The court rejected that argument, emphasizing against that "a seizure by show of authority does not occur *unless* and *until* the suspect submits." *Id.* at 800–01. *Griffin* would thus lead to the same result here.

6

In short, Defendant never submitted to Officer Dotterer's initial show of authority—when he pulled over and then ordered Defendant not to leave—instead, Defendant ran from the scene and was only apprehended later, by a different law enforcement officer. Thus, under controlling authority from both the Supreme Court and the Seventh Circuit, because Defendant discarded his backpack when he was fleeing, before he was "seized" for Fourth Amendment purposes, the evidence cannot be considered the fruit of an unconstitutional seizure.

Accordingly, the Court denies Defendant's motion to suppress that evidence.

## CONCLUSION

The Court hereby DENIES Defendant Dewayne D. Johnson-Emory's Motion to Suppress Fruit Unlawful Detention (Doc. 17).

Signed on this <u>24th</u> day of <u>September,</u> 2024.

s/ James E. Shadid<br>
JAMES E. SHADID<br>
UNITED STATES DISTRICT JUDGE